And the final matter is Edeki v. Atty Gen Joshua Bar-David Counsel to Theodore Cox May I reserve five minutes for rebuttal? Sure. My name is Joshua Bar-David of Counsel to Theodore Cox, attorney for petitioner Mr. Edeki. Mr. Edeki is a member of a particular social group, and the board's decision or the agency's decision in this matter to the contrary is erroneous. The error stems from and is independent of the errors of the board in MEVG. The board in MEVG was tasked with the responsibility of reconciling seemingly inconsistent decisions, or it was given the opportunity to in fact announce a new rule with clearly established guidelines. The board stated that it was merely reconciling its prior decisions, and there was no inconsistency because it renamed social visibility to social distinction, saying that they never intended ocular visibility to be the requirement, which was one of the issues that was questioned by this court in an earlier decision in MEVG. The problem is that the board in MEVG never reconciled the prior decisions. It claimed it did, but it didn't. The perfect example, I believe, is from Matter of Casinga, which is one of the cases that it said it was reconciling, and that's the case involving the social group that was found there was opponents or women who resist FGM. The problem is that if you read Matter of Casinga, where they actually detail the evidence that was provided, there is not a single document or a single piece of evidence cited in Matter of Casinga that indicates that society perceives women who oppose FGM as being a distinct group. They talk about the evidence, how there's vast numbers of instances of FGM, how this particular tribe has a very high percentage of FGM, but there's not a single discussion of any evidence in Casinga that indicates that society as a whole perceived opponents of FGM as a distinct group. So in MEVG, the board left unanswered how it can reconcile Matter of Casinga with this social distinction, which they claimed that they had been applying all along. And that leads to the errors that occurred here, because the social distinction requirement detailed in MEVG, they then go on to, in fact, create a new requirement that had never been applied and, in fact, violates HCFR 1208.13, which says that an applicant, by his or her own credible testimony, can, in fact, establish the burden of proof. Because in MEVG, the board suggests the type of evidence that can meet social distinction. The board indicates that it can be done by an expert witness. The board indicates that it can be done by country reports. Or the board indicates that it can be done by newspaper reports. The problem being that they never said that it can be done by the person's testimony or individual experiences. They can document how they are perceived by society. And that's what happened here. And because the board in this case and the immigration judge in this case were following MEVG, the judge's exact words was there was no evidence of how society views people who oppose this cult in Nigeria, this Black Axe group. The judge, those were her words, was no evidence. To the contrary, there was his testimony, which was found credible, which indicated specifically that people who oppose this group or refuse recruitment or are relatives of members of this group or members who have resisted this group are specifically targeted. In addition, several letters from Mr. Odeki's family detail exactly how people in Nigeria see or know what happens to people who resist the Black Axe. And I would quote from the nephew's letter. He says, the Black Axe is known as one of the most notorious social groups in Nigeria. And then this is the important part. Who will castrate or behead whoever renounces their membership or obstructs them because of their popularity with the government. So not only is the group Black Axe known, according to the nephew's letter, but in fact what the consequences, the harm imposed upon people who resist this group is also known. And so if the harm that is inflicted on people who resist the group is known, then obviously the group themselves is known. And this evidence is plainly in the record. There's other corroborating evidence from the aunt, other family members. This evidence also matches precisely with Mr. Odeki's credible testimony. One question I have is, so I'm going to make sure I understand. So what's the evidence that Nigerian society perceives the relatives of prior Black Axe members who resist recruitment any differently from other resistant recruits? They perceive people who resist recruitment in general as... And the reason that he was being specifically targeted is related to his kinship, that his father was a former high-ranking member and in fact had nominated him as to be the future chief of this group. So I guess the question is, why is that any different than everyone's perception of Black Axe? It's different in the perception of what the particular social group is. This is where we do kind of get jumbled up. The perception of society of people who resist forced recruitment of Black Axe members and Black Axe members who have this kinship relationship or former members are particularly targeted, which is what Mr. Odeki talked about and why he discussed not only that his father was murdered, his sister was raped and murdered, his aunt was targeted and he was targeted because this is the kinship. And society sees what it views as a particular group, those who resist the forced recruitment by Black Axe. I understand, but my question is, how is that different? How is the perception different for his relatives as opposed to other resistant recruits? Who have no kinship. Right. I'm not sure if that's necessarily different, but there's no requirement that it be different. That can be two separate groups still being perceived. He's perceived for his family ties, and he talked about that. So there's multiple potential groups being discussed. And just because society views all people who resist the Black Axe membership as being treated in a specific manner and therefore as a distinct group, society also knew his family specifically. Let me ask you this question. Assuming you get by this social group question, don't you have to establish that there's a nexus between your membership in that distinct social group and the persecution? Yes, Your Honor. And the BIA pointed that out that you'd failed to establish that nexus. I don't see that you've addressed that at all in your brief. Yes, Your Honor. On pages 27 and 28, we specifically say the evidence of these families' letters, in addition to his credible testimony, were ignored entirely by the judge. And this evidence establishes not just that his father was murdered, that his sister was murdered, and that he was kidnapped and held for five days, but the reason why they did it. This evidence specifically establishes that it wasn't random, but it was specific to his opposition to the Black Axe group. So that's the spot where you believe you've argued the nexus? Yes, Your Honor. The exact quote is, the evidence contradicts the BIA's findings that Why did you file a reply brief to emphasize that? Because the Governor raises that in their brief. Yes, Your Honor. The honest answer is I wasn't on the case at the time, and I don't know why they chose not to. I simply don't know why they chose not to. What happened to the Catt claim? The Catt claim does remain preserved. It's argument three of the brief. The judge No, there's no, I mean, once you find him credible, it seems to me the only way to defeat the Catt claim is to sign, to conclude that these folks are not, that the persecution is not at the hands of the government or a group that the government is unwillingly able to control. But then you've got the testimony about the police basically responding with shaking them down for bribes. Yes, Your Honor. They're unwilling or unable to intercede. The social group category disappears, and I just wonder what happened to the Catt claim. The BIA doesn't seem to be at all concerned about it, but they're focusing in on trying to vindicate the social group category that we took issue with. But that has nothing to do with the validity of the Catt claim. Yes, Your Honor. And the judge made two findings with respect to Catt, and the board only adopted one of them. The judge said that he fell, in very conclusory fashion, he failed to demonstrate government acquiescence, and he also failed to establish that the harm he fears that would be inflicted wouldn't rise to the level of torture. I'm not sure if castration or beheading is Castration, beheading, death, castration, you know, I'm not ultra-sensitive to that, call that torture. Certainly he has interrogation. Yes, Your Honor, and the board didn't adopt that second finding, at least makes no mention of it. The board only adopted the finding, again, in conclusory fashion, that there was, quote, no evidence of government involvement. And we, as argued in our briefs, the statements show government involvement, as well as the report issued by the UNHCR, which indicates that the Black Acts was actually originally started by Nigerian soldiers with the acquiescence of the government in order to, and then they were creating smaller groups on campuses in order to control students. And as the letters state, and the background evidence indicates, that, in fact, they maintain an involvement, that there's a high number of government officials who are involved because there is such a prevalence on campuses which are viewed as agents of, you know, selling dissent. And so this is a way for them to maintain some sort of control on campuses. I do see that I'm out of time. Unless you have further questions, I have some time for rebuttal. Thank you. Thank you, Your Honor. May it please the Court, please have some mercy of the Office of Immigration and Litigation for the respondent. Before the Court today are the issues of petitioner's eligibility for asylum, withholding from removal, and protection under the convention against torture. How do you respond to the Chet claim? Your Honor, first of all,  the evidence that the record compels reversal of the Board's denial of the CAT claim on the basis that it is more likely than not that the Nigerian government would acquiesce to his torture. As we argued in our brief, the immigration judge said that the evidence in the record was equivocal. Where is the equivocation? He tried to report it to the police, they basically ignored him, they tried to shake him down, but they clearly weren't doing anything. Your Honor, this case is actually, besides the cases that we said in our brief, this case is actually quite similar to Galdamez's finding regarding CAT. Essentially, in this case, Edeki, as we argued in our brief, Edeki only testified of one instance where he approached the police, and it wasn't even related to his own situation. What was the police response? Actually, his testimony is quite unclear. As we pointed out in our brief, he called once, according to his testimony. He called once, he called one policeman, and the policeman was like, oh, the policeman responded like, you know, I'll investigate, can you give me money? But that's the only instance where he says that he approached the police. In all these other instances, after he was kidnapped, after he alleged that he was threatened when he went to his aunts, he never calls the police again, he never follows up about his father's investigation either. So besides that one instance, there's no other evidence in the record that he ever approached the police again. What about your opponent's argument that there's evidence here that this group, in fact, rose out of the government, out of government forces, and is basically a child of the military? That's my only reading of what he said. As we argued in our brief, we would not deny that. In the record, there's some general statements regarding government corruption and the fact that there might be some collusion, excuse me, not collusion, there might be some corruption in the government, and it might involve cults. These are general statements, and these general statements are repeated in letters, but there's no actual evidence of it. Rather than that, in the reports that were in the record, the State Department report itself reported a number of police officers, admittedly this is not necessarily the best situation, but when they were confronting a cult to go arrest members who were involved in violence, there was a violent confrontation, a number of them were killed, but they were on their way to arrest cult members. On top of that, the Home Office Operational Guidance Note observed that the Edo State Police Commissioner, which is where this petitioner said he was from, said that the federal government was doing its best to tackle cult violence. It had some, it needed improvement, the police equipment needed upgrading, but this report directly says, and I'm referring to the record on page 243, that the Edo State Police Commissioner said that the federal government was doing its best to tackle cult violence. This was repeated in the Canadian Immigration Refugee Board report that was also in the record. All of these, all of the background country evidence report here, they do have evidence that there is some corruption in the government. However, it also responds that the government is trying to tackle cult violence. To the extent that the petitioner says that, like, the Black Acts cult, there is evidence in the record that the cult exists in Nigeria and that there is violence associated with it. But just like in Valdiviezo Galdamez, that's not enough to establish the standard of acquiescence under CAP. Let me go back then to this whole social distinction, social visibility thing. Why, even the way he's defining a social group, he's not even saying someone who's resisting recruitment into this cult, but someone who has a kinship tie to the cult and who is resisting recruitment. Why doesn't the kinship give you the social distinction, particularity, whatever you want to call it? Why wouldn't that be enough, even if we were to accept your new formulation of social visibility? Well, Your Honor, I think this is a point that Judge Greenaway was sort of alluded to when he was asking the petitioner about, you know, what is the difference between people resisting the Black Acts from, like, and Your Honor's question related to kinship ties. The exact social group as alleged here is a multi-term proffered group. He has to show that the group that he alleged is socially distinct in the society in question. He didn't allege simply kinship ties. He didn't simply allege people who were resisting recruitment by the Black Acts group. His group was individuals who had significant kinship ties to the Black Acts cult, but who consciously refused to be in this cult. This is a multi-term proffered group. Are you saying that he has to use simple sentences to make the allegation? He can't use a compound sentence? The petitioner has the burden to establish his claim for asylum and withholding removal, and part of that burden is articulating his particular social group. If the petitioner doesn't fulfill that burden, if he has constantly changing groups, there's no opportunity. I think I'm somebody trying to argue that, to the extent you're arguing that there's so many things in here that constitute the group, I don't know why that's a bad thing as opposed to a good thing, because the more things that he is saying make him a distinct group, the more particular his group becomes, and the more you get away from a situation where it opens the door, the floodgates to anybody in society trying to assert that claim. But it sounds like you're arguing that he's got too many things going in to qualify his group. I'm not arguing he has too many or too little. The fact is that he has the burden to show that he's socially distinct in particular. He has to show that his group is socially distinct in particular in the society. So give me an example of that. Excuse me? So I said, so give me an example of that. An example of a group. You just said that he has to prove that his proposed social group had social distinction, and I'm asking you, give me an example of that. The descriptive terms that he's used, you say, are flawed, and so I just want an example of one that would not be flawed. Well, Your Honor, the Board clearly points out that these cases have to be decided on a case-by-case basis. He's asking for an example of one of those cases. Well, the Board hasn't actually applied MAVG, WGR, and any other in that many precedent decisions since now. I mean, the only one I can think of is the matter of ARCG. Please don't stand before us and tell me you can't answer a hypothetical. It's a hypothetical. Well, I mean, for example, the Board in reconciling the previous cases gave examples in which it would say, I'm just, I cannot give an example of how the petitioner could make, I should say, I'm trying to answer, I can't give an example of how the petitioner could make his group socially distinct. How about this for an example? Let me try to help you and ask a question at the same time. I think on your kinship argument, you're saying that the kinship argument has to fail here because they allege kinship to their own relatives who were a member of the Black Acts, but the members of the social group don't have the same kinship, and that's where kinship would apply. Let me assume that this was a big family. Let me assume there was a big family across these different states in Nigeria, all who were subject to the same likely persecution if they returned, and they were all part, horizontally, part of the same kinship, connected to somebody who had been a former chief priest of the Black Acts. Would that suffice? Well, Your Honor, I would have to say that the board would have to decide that in the first instance. In some ways, that's the exact circumstance that was presented in Gonzales v. Thomas, where the Supreme Court remanded for the court to address, in the first instance, the family of Bassarani. But to get back to the example that Your Honor was asking for, for example, in one of the cases that the board was saying that was reconciling, in the matter of Tobasso Alfonso, it gave the example of homosexuals in Cuba. Well, that's not homosexuals in Cuba. Tobasso Alfonso is a female genital mutilation. No, that's not what I said. I'm sorry. Go ahead. But that's different, because if you have homosexuals in Cuba, you can just say homosexuality as a particular social group, and you've got to lead a society that condemns that behavior. So let's focus in on the matter of Kasinga. Well, the matter of Kasinga, it was young women of – I'm sorry. Let me actually look at the exact social group. Young tribal women who were opposed to female genital mutilation. Who were opposed to female genital mutilation. And the board found that the record – to give you an example of how it would find that group socially distinct, the board pointed out that the record contained objective evidence regarding the prevalence of FGM in the society in question and the expectation that women of the tribe would undergo FGM. And based on the facts, they found that the people in that particular tribe would generally consider women who had not undergone FGM and opposed the practice to be a discrete and distinct group that was set apart in a significant way from the rest of the society. How is that different? What makes it even more murky is that the group there was young – I don't know what you mean by young – young tribal women who were opposed. Not just tribal women, but young tribal women who were opposed to female genital mutilation. I just – and maybe part of the problem is the term itself. In fact, in the opinion, MEVG was maddening leading to it because the board used these examples that are examples of groups who are protected because of political opinion or religion and then tried to conflate that somehow into amplifying what they were saying about social distinction, whereas those groups are protected on their own within the statute. It's a really frustrating opinion to read, but be that as it may, I'm still trying to figure out how you can have an opinion which reaffirms the validity of the matter of Kasinga that says that folks who have even more particularity than the folks in Kasinga had are not part of a particular social group. Well, Your Honor, first of all, we aren't talking about particularity here. The board didn't reach the question of particularity here. It only reached the issue of social distinction. And if you actually look at the decision in the matter of Kasinga, the board cites in that case multiple – it cites record evidence. It cites several reports. There was an FGM alert by the INS. It cites State Department reports. It cites several reports regarding views of that tribe, essentially, about the concept of FGM. That is how it could go back and it could say we could have found social distinction there. But we have evidence here, which is quite incredible, about how people are looked at who refuse recruitment, specifically people who have kinship ties to this group, who are looked at by members of the group. Maybe that's your argument. Maybe the class is too narrow because it's defined in terms of the persecutor and not in terms of the society. You could make that argument. Your Honor, we're not making an argument regarding the narrowness of the group or the particularity of the group. We're making an argument regarding the social distinction of the group. That was the only finding of the board here. The board didn't reach the question of particularity. In MAVG, it said that the three requirements were immutability, social distinction, and particularity. It didn't have to reach particularity here. It could find an independent dispositive ground of denying this decision only on social distinction. Help me with the social distinction. On the social distinction, as we argue in our brief, I don't want to say the problem here, but the issue here is that the petitioner defined his group in a very specific way. I'm not going to read it again, but he put everything in there. He put kinship ties. I don't know why that helps him because you're very concerned. Your agency, every time one of these cases come in, you're concerned about opening the floodgates. There's got to be some way to narrow it down. Your argument is that Congress did not intend to have everyone who might be subject to some kind of mistreatment, even if that mistreatment rises, whatever, with persecution, that everyone was intended to be protected by Congress. It's got to be discreet, narrow. And you're saying now that he's made it too narrow. That's what you're arguing. The group is too narrow because there's so much in there. Well, again, Your Honor, we're not talking about the delineation of group, the particularity of the group. We're only talking about the social distinction. The difference between this case and the cases that were given as an example of reconciliation in matter of MAVG is, as matter of MAVG pointed out, there were reports in each of those cases that they went through that said something about that group in some way. In matter of Tobasso Alfonso, he testified that residents threw eggs and tomatoes at him when he was being forced to leave the country because of his status as a homosexual. He submitted evidence that suspected homosexuals are subjected to physical examinations, interrogations, and beatings. That's an easy call, Tobasso. I think that's a very, very easy call. What about matter of one case where the issue wasn't decided but the possibility was allowed? This seems to be a heck of a lot more of a socially distinct group than former police officers in a particular country. Well, in that decision, Your Honor, I'm sorry, I'm out of time. Can I continue? Go ahead. In that decision, the board didn't reach that, so we don't know what type of sufficient evidence there would be. The board said it was possible to do that. Yes. So they allowed for the possibility that former national police members could constitute a socially distinct group. Well, as we argued in our brief, that case can actually still be distinguished from this case. In that case, they noted that there is evidence of social distinction, that a witness testified that the guerrillas had an actual list of former service members and targeted them ostensibly evidence of just persecutors' perception, which the board said could inform, but it's not the only informing point here. I mean, that, as Your Honor referred to a little bit earlier, a group can't simply be defined by persecutors' perception. The fact that the black ex-cult is after him can't simply be the defining part of his group. It has to be a societal evidence. And in matter of frontis, they also mentioned societal evidence. They noted that additional evidence had been submitted to society's perception, evidence that the national police played a high-profile role in combating guerrilla violence. So there was additional evidence in that case. Whether that would be sufficient, I don't know, but there was some evidence of society's perception there. The difference between that case and this case is that there's nothing in the record that addresses the group as he proffered it. So if he can't divide his group now into two discrete points and say, I have shown evidence here, I've shown evidence there, and say that that's my group. If the petitioner's argument was essentially, I've shown evidence that there's some evidence in the record regarding opposition to recruitment. However, that wasn't his group. And then he says, but I was targeted on account of kinship. I don't know why that's a bad thing. His group is becoming more and more particular. No, he didn't reach that. No, he didn't reach particularity. I don't have to go back there. I know he didn't reach that. But I just don't know why the fact that there are more in the issue of a particular social group here to more and more separate it from the general society is all of a sudden a bad thing. You're saying the more uniqueness he has in his group, the more distinct it is from society, it's a bad thing because he keeps adding on things, but we're not getting anywhere. May I answer? Go ahead. Well, I mean, this goes back to the board's original point when it was providing its reasoned explanation that this court, of course, should accept and defer to regarding particular social groups. Go ahead, Ms. Shepard. Yes, Your Honor. But this goes back to the initial point that the board was making regarding why social visibility and particularity was necessary. This goes back to the board's initial point that particular social group is not a catch-all for every single individualized group. We agree. We absolutely agree. We agree that it's not a catch-all for every group. That was my point. And you're criticizing him for putting so many unique things into his group, and that seems at odds with the board's position that not every group can be entitled to the protection of the statute. But I'm not sure we're getting anywhere. This is a light sign, and I know he deserves some time to work on it. Thank you, Your Honor. Thank you. Thank you. I can just start with the evidence. The record is being faulted for containing what's characterized as general evidence relating to the Black Acts group. The problem is in the issue that we're raising with the requirements laid out. Put the mic up a little bit. Sorry, Your Honor. With the requirements that were laid out in MEVG, which is that the evidence, it abrogates the regulation which indicates that a person can establish their claim by their credible testimony alone. MEVG seems to require, and certainly the judge in this instance required, background conditions, evidence relating specifically to this social group, which in some instances may be impossible. Whatever evidence is out there was presented, but his testimony and the letters of family members dealing with his particular circumstance, with what they experienced, does establish the group, does establish that his father was a prominent politician in their area, that his father was a senior member or somehow high ranking in Black Acts, and in fact had designated him to be the future leader of this group. So it's not just that his group is that he's a resister. In terms of the general society, Nigerian society writ large, what evidence is there of folks outside of the group? I think that may be part of the discussion we're having. There's got to be evidence that persons other than the persecutors regard this as a group. What other evidence is there of that? Well, that's the letters of family members saying everyone knows what happens to people who resist. And then the question becomes, well, if not only did he resist, but he is the son of a former prominent member of this group, and the future designated leader of this group who's resisting that, would certainly indicate that society, knowing that information, would see him as distinct. Right, but that's just the members of the group sort of looking outward. I mean, it sounds like the quantum of proof you want are from people outside the group looking in, rather than people inside the group looking out. I mean, you alluded to his relatives saying that. His relatives saying that everyone knows what happens to people. They're castrated or beheaded. And so that's the knowledge of general society for what happens to people who resist. And I realize that that does require some looking at maybe some circumstantial evidence to making conclusions. The problem that we have here is the judge said there was no evidence. The judge didn't consider these letters as evidence of social distinction. The judge said there was no evidence, apparently following MEVG, which gave no discussion that a person could establish their membership in a particular social group or social distinction through their own testimony. MEVG says these are the types of evidence we're looking for. It makes no mention of their testimony, which is completely contrary to the regulation 8 CFR 1208.13. And so while certainly there may be some question as to whether or not this evidence is sufficient, we haven't even gotten an answer yet, because the judge viewed only certain types of evidence as being able to establish the claim. And so at the very least, it would require a remand to determine whether or not the evidence was sufficient by the agency. Going back just to MEVG in terms of how it reconciles with other decisions, matter of Kasinga makes it even more difficult. MEVG now makes it even more difficult to reconcile matter of Kasinga because, again, while the board pointed to evidence, it only pointed to evidence about the prevalence of FGM and as well then pointed to evidence of what the persecutors do to people who resist. So how the board is able to reconcile its requirement that it's not in the eyes of the persecutor to establish the social group but society as a whole, where in Kasinga they actually focus on the persecutor's perception of resistors, it gives no discussion, no mention of any evidence dealing with society as a whole viewing resistors of FGM. So, again, MEVG doesn't accomplish what it was tasked to do by this court, which is to reconcile its prior decisions or announce a new rule, and it didn't either. What evidence is there in this record of government acquiescence or government involvement? Well, again, on page 268, the fact that the U.N. report documents that this group was set up by soldiers, and then I believe on 269, the following page actually indicates that the, I think the term was, even though a law had been enacted banning them, the prevalence and openness with which they were operating was shockingly high, I think was the word, shockingly, or something along those lines. And, again, that can indicate that, well, if there's a group set up by soldiers and no enforcement of a ban on it, and prevalence throughout Nigerian society, especially on college campuses, is shockingly high, that can certainly indicate that there would be an acquiescence on behalf of the government to any harm being done. The second point is as individuals experiences the fact that when he reported that his father was beaten to death, his sister was raped multiple times and then slashed to death with a machete and the police did nothing also indicates that there would be acquiescence. Well, I mean, you suggested you reported that to one police officer and that was it, and I want to minimize that because that does seem to suggest something, but we have to make some difference in the finding of the IJ, too. I would only answer that, and this is probably an insufficient answer, other than to say yes, I think that's troubling that if they don't investigate a murder, a rape, a double murder and a rape, what is to say they're going to investigate his kidnapping or anything further? And the only other answer to that is that he was never specifically asked how many times he called the police. He was only asked, did you call the police after your father's murder? So it's unanswered, and I do understand it's his burden to establish, but that he didn't call the police in other instances is unanswered. Unless the court has any further questions. No, it doesn't matter, Andrew. We would like to thank the court counsel for their argument. Thank you. Why don't I do the transcript of this, and you can see, Mr. Lombardo, to arrange for the transcript.